ROAD DISTRICT No. 27 *v.* SPRADLEY.

Opinion delivered January 30, 1922.

1. HIGHWAYS—PERMISSION TO MAKE EXPENDITURES—EVIDENCE.—In a proceeding by a road overseer for allowance against the county for work done on a public road, evidence *held* to sustain finding that before doing the work he obtained permission from the county court to do so.

2. HIGHWAYS—PERMISSION TO MAKE EXPENDITURES—NECESSITY OF WRITTEN PERMISSION.—Under Acts 1917, p. 1478, requiring road overseers to obtain the county court's permission to make expenditures, while the county court could require application for such permission to be made in writing, no such requirement is made by the statute itself.

3. HIGHWAYS—PERMISSION TO MAKE EXPENDITURES.—Where a road overseer discussed contemplated expenditures with the county judge, and was verbally authorized by him to go ahead and do the work, and the county judge approved the work done, Acts 1917, p. 1478, requiring road overseers to obtain the county court's permission to make such expenditures was substantially complied with.

4. APPEAL AND ERROR—QUESTION NOT RAISED BELOW.—Objection that an account against a county was not verified and filed with the county clerk as required by Crawford & Moses' Dig. § 2029, cannot be raised on appeal for the first time.

Appeal from Crawford Circuit Court; *James Cochran,* Judge; affirmed.

*J. E. London* and *Starbird & Starbird,* for appellant.

The court erred in allowing the account. The statute was not complied with. Acts 1917, p. 478.

It was error to employ or work more than twelve hands on the road at one time. C. & M. Digest, § 9001.

The plaintiff had no authority to incur indebtedness for work on the roads in excess of the district's revenues. 120 Ark. 509. He failed to make a full report of all work done by him on the roads. C. & M. Digest, §§ 5264 and 5343.

*E. L. Matlock,* for appellee.

No objections having been made to the sufficiency of plaintiff's accounts in the court below, it is too late to raise the question here for the first time. 144 Ark. 267.

There was no motion for new trial. The court can only correct such errors as appear in the record proper or in the judgment. 93 Ark. 85; 93 Ark. 382; 127 Ark. 22; 140 Ark. 218.

WOOD, J. This is an appeal from the judgment of the circuit court of Crawford County in favor of the appellee against Crawford County in the sum of $241.50. W. P. Spradley was the overseer of Road District No. 27 of Crawford County. He presented to the county judge a claim as overseer for the sum of $241.50, which he alleged was due him for work done on public roads in the

district of which he was the road overseer. The county court refused to allow his claim, and he appealed to the circuit court. In that court he testified that the amount due him was $241.50. The accounts he presented made out in due form originally amounted to $457.50, which included various sums due other persons who worked under the appellee. The county court allowed these various sums, and then disallowed appellee's part of the account. The work for which the appellee claimed pay was done on various roads in the district of which he was road overseer. Before doing the work he went over the matter with the county judge, explaining the nature of the work needed and giving him an estimate of the probable cost to the district in addition to the free labor. Judge Smith authorized the appellee to go ahead and do the work. The work was all done on regularly established public roads and was badly needed. After it was done the county judge looked it over and approved it. Appellee used all the free labor he could, and some labor was donated by persons not liable for road duty. The labor charged for was labor of men and teams that appellee necessarily had to pay for. Part of the work had to be done with a grader, and it required from two to three teams and an experienced man to run the grader. After the accounts were filed, Judge Smith held them up, but finally paid the amounts due the persons whom the appellee had hired to do the work and whose accounts appellee set out in his statement, but on the 7th of June, 1920, the county court disallowed the appellee's part of the accounts. While appellee was working on the roads, the county judge knew that the appellee was hiring the grader crew and urged him to continue the work. He knew that Clegg, Johnson and McClure ran the grader, and he allowed and paid them for their work and for the men and teams they hired. Appellee spoke to the judge on one occasion about allowing his accounts, and the judge replied that he was going to use appellee as an example to force other road overseers to comply with his rule.

Finally, after the appellee became a candidate for county judge, the county court took up appellee's accounts and disallowed them. Appellee had in his hands a complete list of the men in Road District No. 27 subject to road duty, which he offered in evidence and asked that it be made a part of his testimony. The list contained the names of two hundred and fifty-six men. Appellee never did refuse to work free labor, but on the contrary, worked it up as close as possible and kept it practically exhausted. Appellee never refused to report to the county court the amount of free labor used or the number of men subject to road duty in his district. In his monthly accounts filed with the county court he showed how much free labor he had used as best he could from the information at hand. Appellee was overseer of about one hundred and sixty miles of public roads and had to let out a great deal of the work to other persons, and his information as to what was going on under other crews was more or less incomplete. The men who ran the different crews used the grader, and the county court allowed their charges for the same just as the judge agreed that he would do for the appellee. Appellee never told the judge that he would not work the roads with just one team, nor that he would not work unless he could use all the teams. Appellee kept the county judge informed from time to time approximately of the number of men in the district subject to road duty, of the number of days worked by them, and when appellee would use up a book of warning notices he would file that book with the stubs filled out showing who had been warned out and for how many days. These stub books and the report and accounts were all in the possession of the county judge.

The record contains reports of the appellee as road overseer of District No. 27 to the county judge, showing hired labor, hired teams, number of days worked and the amounts paid therefor. These reports were made for the terms ending, respectively, December 31, 1919, January 31, 1920, March 31, 1920, and April 30, 1920. In some of

these reports, under the head of remarks, the condition of the roads is given and an estimate of what was necessary to put same in good condition.

Witnesses Clegg, Johnson and McClure testified that they were employed by the appellee to work on the public roads in the district. They were each given a book of warning notices and instructed to warn all the free labor that they could use, and did so. The work done by them was on public roads, and was necessary. After they had finished the work they left the books with the free labor in them at Van Buren with the appellee, and were told by appellee that they were lost. They turned in their accounts to the county court, which were allowed and paid direct to these several witnesses.

Judge Smith testified substantially as follows:    At the election of 1918 the road tax for Crawford County was not voted, but there was a residue of funds for District No. 27 which was used in accordance with previous practice until the funds were reduced to about $750 or $800. He then informed appellee that this amount would have to be set aside for the building of a new road that had been recently laid out by the county court, known as the "Mud Bridge road," that to put this road in shape would exhaust the funds of the district. Witness directed the appellee to repair the roads of the district with free labor, and that witness would take care of appellee's pay as road overseer and of one team and one hand. This witness could do out of the county road and bridge fund appropriated by the quorum court for emergencies. Appellee said that he would not work that way; that if he could not work all three of his teams there was nothing in it for him. Witness then told the appellee that his accounts would be audited in view of the directions given him—that is, pay for one hand and one team and his own wages as overseer, and no more; that if he put in a claim for other hands and teams his claim would be disallowed, and if he failed to work the free labor his claim would be disallowed; that there was nothing left with

which to repair the roads but free labor. Witness told the appellee to make a list of all the free labor in his district and file same with the county clerk as the law directs. This the appellee refused to do. Appellee refused to file the reports required of him as overseer at each quarterly term of the county court. Witness required the appellee, in his capacity as county court, to work the free labor which appellee refused to do, saying no former court had required him to do it and that he would not do it for witness. Appellee made no report of the free labor, work performed, money spent, roads repaired, bridges built, or anything else required by law for him to do. Witness held up appellee's accounts for three months waiting for him to make the reports required of him, which appellee specifically refused to make. Appellee one day picked up a paper and wrote on it 160 and underneath it 500. He said the 160 represented the number of hands subject to free labor and the 500 the number of days' work due from them. Witness refused to accept such a statement as a report, but required appellee to make a list by name and file the list with the county clerk, which appellee refused to do. Witness suggested to appellee that there was a large amount of free labor due from smelter hands. Appellee replied that there was not ten days' labor there that could be had. Witness afterward appointed S. W. Burgett to work free labor, and he got 142 days' free labor from smelter hands. Witness allowed and paid all other road accounts of other persons. He disallowed appellee's account for the teams and men he hired. Witness had adopted a rule requiring road overseers to make out and file a report. Two or three road overseers in the county had complied with the order. The road tax was not voted in 1919, but the quorum court levied the regular three-mill road tax. It was put on the tax books and collected and was used for road purposes.

An act approved March 21, 1917, act No. 290 of the Acts of 1917, p. 1478, constitutes the county judge of Crawford County a road commissioner and gives the

county court of Crawford County charge of and super-
vision over all moneys collected for roads and bridges in
Crawford County, and directs that no money arising from
taxes collected for roads and bridges shall be expended
without the authority and direction of the county court,
and provides that the overseers, before expending any
money for any purpose on roads and bridges, shall apply
for and obtain permission of the county court to make the
expenditure, and in their application they shall state the
amount needed, the purpose for which the money is to be
expended and the place where; and further provides
that no allowance shall be made by the county court until
it has determined that it is a proper and necessary ex-
penditure of the money.

The appellant contends that no application was made
to the county court by the appellee as overseer for per-
mission to make the expenditures in compliance with the
above statute, and that no permission was granted him
by the county court to make the expenditures.   On this
issue the testimony was in conflict.   There was testi-
mony sufficient to sustain the finding of the trial court.
The appellee testified that before doing the work he
went over the matter with the county court, explaining
the nature of the work needed and giving an estimate
of the probable cost to the district, and after the work
was done the county judge looked over and approved the
same.   The obvious design of the above statute was to
fully advise the county court of the work necessary to
be done on roads and bridges in Crawford County and
to get the authority of the court before such work was
done.   Under the above statute the county courts, of
course, could require road overseers to make their ap-
plications for permission to make the expenditures con-
templated in writing, showing the amount needed, the
purpose for, and the place where the money was to be
expended; but there is nothing in the language of the
statute to indicate that such requirement was mandatory,
and therefore, a condition precedent to obtaining the per-
mission of the county court.

It occurs to us that it is a sufficient compliance with the requirements of this statute where the overseer goes over the subject-matter thereof with the county court and advises it fully of the necessary improvements and the amounts required to make same, and in this manner obtains permission and authority of the county court to make them. Certainly, where permission of the county court to make the expenditures has been thus obtained and after the work has been done, but before allowing any claim for expenditures on account thereof, the county judge has looked over and approved the work, the statute has been complied with in essential particulars, and the county court cannot fail to allow the claims for expenditures made under such circumstances. In construing this statute it must be remembered that the county judge is expressly made road commissioner. The testimony for the appellee tended to prove that in the particulars mentioned he had substantially complied with the statute.

The appellant urges that the trial court erred in allowing appellee's claim because the same was not verified and filed with the county clerk, as required by § 2029, C. & M. Digest. The county judge who refused to allow the claim testified before the trial court and gave the reasons why he refused to allow appellee's claim, but he did not assign the failure to comply with the above statute as one of the reasons. No such objection to the claim was raised in the county court or in the circuit court. The appellee at the trial offered in evidence copies of the accounts and reports presented by him to the county court, and no objection was made to their introduction.

In *Hempstead County* v. *Wilson*, 44 Ark. 267, it was urged in this court for the first time that the claim against the county was not properly itemized as required by the statute. Disposing of that question, we said: "No objection to the sufficiency of the specification of the items was made in the court below, and it is too late to

raise that question here for the first time. If objection had been made on that point, the court should have permitted amendment.'' The appellant treated the account as sufficient in form in the court below, and he therefore cannot urge here that it was insufficient.

The appellant next contends that the appellee violated the provision of the statute making it unlawful for a road overseer to work more than twelve hands at the same time. Sec. 5308, C. & M. But there is no testimony in the record to warrant the conclusion that the appellee violated the provisions of this statute, nor was this made one of the grounds either in the county or circuit court for the rejection of the claim of appellee.

It is next insisted that the appellee was notified by the county judge that the funds of the district had been exhausted except what had been set aside for the building of a new road known as ''Mud Bridge road,'' and that he was directed by the county judge to use only free labor in the work, and that the appellee violated this order in doing the work for which he presented his claim. The testimony was sufficient to justify the lower court in finding against the appellant on this issue. While the county judge testified on direct examination that there was no road tax voted in 1918, and for that reason the road funds became exhausted, yet his testimony on cross examination shows that the quorum court in 1919 levied the regular three-mill road tax, and that it was put on the tax books and collected, and was used for road purposes; that he paid all other road accounts except the appellee's; that he disallowed appellee's account because he disobeyed or ignored the directions of the county judge in hiring teams and men, and also because he failed to comply with the directions of the county court in the matter of filing his reports. So the trial court was justified in finding that the appellee's claim was rejected not because of lack of funds in the treasury to the credit of Road District No. 27. The court was also warranted in finding that the appellee did not disobey

the orders of the county court in the matter of hiring teams and men and in the making of his reports. The issue as to whether the appellee had complied with the orders of the county court and the requirements of the statute in the discharge of his duties as road overseer was an issue depending upon the facts adduced at the hearing. There was substantial testimony to sustain the finding of the trial court in favor of the appellee. Its judgment is therefore correct and is affirmed.